UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| KENTRELL D. WELCH,<br><br>    Plaintiff,<br><br>  v.<br><br>ISIRIDO BACA, *et al.*,<br><br>    Defendants. | Case No. 3:20-cv-00079-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 212] |

This case involves a civil rights action filed by Plaintiff Kentrell Welch ("Welch") against Defendants Peter Garibaldi ("Garibaldi"), Ron Hannah ("Hannah"), Sylvia Irvin ("Irvin"), and Nathan Hughes ("Hughes") (collectively referred to as "Defendants"). Before the Court is Defendants' motion for summary judgment (ECF No. 212). Welch responded, (ECF Nos. 214, 215, 216)[2], and Defendants replied. (ECF Nos. 217, 218, 219.)[3] For the reasons discussed below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 212), be granted.

///

///

---

[1]   This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

[2]   ECF No. 214 is Welch's response to the motion for summary judgment. ECF No. 215 is an "Objection to Failure to Exhaust". ECF No. 216 is a "Declaration/Affidavit for Civil Action Suit."

[3]   ECF Nos. 217, 218, and 219 are identical documents filed to address each of Welch's filings. Thus, ECF No. 217 was filed as a reply in support of the motion for summary judgment (ECF No. 212), ECF No. 218 was filed as a response to Welch's Objection to Failure to Exhaust (ECF No. 215), and ECF No. 219 was filed a response to Welch's Declaration/Affidavit for Civil Action Suit (ECF No. 216).

## I. FACTUAL BACKGROUND

Welch is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). The events related to this case occurred while Welch was housed at the Northern Nevada Correctional Center ("NNCC"). (ECF No. 212-1.) Welch's complaint consists of two distinct sets of facts. Each is discussed in turn.

### A. Retaliatory Transfer

Welch's first claim is based on allegations that Welch filed a grievance against Defendant Irvin and, in response and in retaliation, Irvin transferred Welch to a segregation unit and submitted paperwork to transfer Welch to the maximum-security prison. (ECF No. 34 at 5.)

Specifically, on August 30, 2019, Welch was approved for a transfer to NNCC from the High Desert State Prison. He and was then to be reviewed for a transfer to Ely State Prison ("ESP") after a medical review. (ECF No. 212-1 at 11-12). After Welch was cleared by medical, on October 7, 2019, the NNCC classification committee reviewed Welch for possible reclassification to ESP based on his high-risk factor score and high potential for violence. (*Id.* at 13.) The classification committee approved Welch to remain at NNCC, by overriding his risk factor score. (*Id.*)

On October 8, 2019, Welch asked for an immediate transfer into protective segregation because he allegedly was afraid of inmates in Unit 5 at NNCC. (ECF No. 212-4.) Welch was moved into protective segregation. (*Id.*) For six months, from October 2019 through April 2020, Welch repeatedly refused to identify the Unit 5 inmates who made him afraid. (ECF No. 212-1 at 18.) Because Welch refused to identify the Unit 5 inmates, the classification committee's recommendation for Welch to remain at NNCC was changed to recommending Welch's transfer to ESP. (*Id.* at 13.) Ultimately, on May 19, 2020, Welch arrived at ESP from NNCC. (*Id.* at 19.)

### B. Denial of Access to Grievance Procedure

Welch's second claim is based on his allegation that he was denied access to the grievance procedure when Defendant Hannah allegedly refused to pick up Welch's

grievances and Defendants Hughes and Garibaldi refused to remedy the situation when Welch complained. (ECF No. 34 at 6, 8.)

On November 12, 2019, Welch filed an emergency grievance alleging his grievances had not been collected. (ECF No. 212-5 at 6.) Welch received a response the same day. (*Id*.) The emergency grievance response stated Welch's complaints did not rise to the level of an emergency, his grievances will be collected, and Welch should have started with an informal grievance. (*Id*.) Welch's informal grievance, dated prior to his emergency grievance, was signed by the grievance coordinator on November 14, 2019. (*Id*. at 4.) The informal response states there is no evidence that Hannah has been "outside the scope of his duties," Welch failed to indicate any loss, and grievances have been collected and responded to by staff. (*Id*. at 3.).

Welch then filed a first level grievance stating his assumption that his unidentified grievances, dated between November 5 through November 12, 2019, will be rejected, or returned for being late. (*Id*. at 2.) The first level response states that the grievances would not be rejected because the grievances would be dated the day they were processed. (*Id*. at 1.) Welch's second level grievance response states that Welch's grievance contents changed from the original issues and the response states that Welch failed to provide proof or further evidence that Welch's rights were violated, including Welch's failure to prove his grievances dated November 8, 2019, were rejected. (ECF No. 212-6.) Welch also alleges that when he tried to talk to Hughes about the actions, Hughes refused to give Welch an office hearing and directed him to write a grievance about the issue. (ECF No. 33 at 6-7.) There is no evidence of a grievance regarding this issue being filed. (*See* ECF No. 212-7.)

## II.  PROCEDURAL HISTORY

On February 5, 2020, Welch submitted a civil rights complaint under 42 U.S.C. § 1983 together with an application to proceed *in forma pauperis* for events that occurred while Welch was incarcerated at NNCC. (ECF No. 1-1, 34.) On June 15, 2020, the District Court entered a screening order on Welch's complaint, allowing Welch to

proceed on (1) a First Amendment retaliation claim against Irvin, and (2) a Fourteenth Amendment denial of access to grievance procedure claim against Hannah, Hughes, and Garibaldi. (ECF No. 33.) After lengthy issues related to whether Welch would amend his complaint, Welch ultimately elected to proceed under the original complaint and screening order. (ECF Nos. 103, 106.)

Defendants Garibaldi, Hannah, and Hughes filed their answer on September 7, 2021, and Irvin filed her joinder to the answer on September 28, 2021. (ECF Nos. 133, 141.) On June 29, 2022, Defendants filed a motion for summary judgment arguing summary judgment should be granted because: (1) the official capacity claims for monetary damages must be dismissed; (2) Welch failed to exhaust his administrative remedies; (3) Welch cannot prove an issue of material fact for either of his claims; (4) Defendants Garibaldi and Hughes did not personally participate in the alleged constitutional violation; and (5) Defendants are entitled to qualified immunity. (ECF No. 212.) Welch responded, (ECF Nos. 214, 215, 216), and Defendants replied. (ECF Nos. 217, 218, 219.)

### III.    LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim or claims determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then

(2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands, LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007); *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the

1  nonmoving party to establish that a genuine issue of material fact actually exists.
2  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The
3  nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co.*
4  *v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal
5  quotation omitted). In other words, the nonmoving party may not simply rely upon
6  the allegations or denials of its pleadings; rather, they must tender evidence of specific
7  facts in the form of affidavits, and/or admissible discovery material in support of its
8  contention that such a dispute exists. *See* Fed.R.Civ.P. 56(c); *Matsushita,* 475 U.S. at
9  586 n. 11. This burden is "not a light one," and requires the nonmoving party to "show
10 more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp.*
11 *Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth
12 with evidence from which a jury could reasonably render a verdict in the non-moving
13 party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*,
14 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will
15 not defeat a properly supported and meritorious summary judgment motion. *Matsushita*
16 *Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

17         When a pro se litigant opposes summary judgment, his or her contentions in
18 motions and pleadings may be considered as evidence to meet the non-party's burden
19 to the extent: (1) contents of the document are based on personal knowledge, (2) they
20 set forth facts that would be admissible into evidence, and (3) the litigant attested under
21 penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923
22 (9th Cir. 2004).

23         Upon the parties meeting their respective burdens for the motion for summary
24 judgment, the court determines whether reasonable minds could differ when interpreting
25 the record; the court does not weigh the evidence or determine its truth. *Velazquez v.*
26 *City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider
27 evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ.
28 P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine

the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

## IV. DISCUSSION

### A. Official Capacity Claims

First, Defendants argue official capacity claims for monetary damages against Defendants must be dismissed. (ECF No. 212 at 5.) However, when the District Court screened Welch's complaint, only claims for monetary damages were allowed through. (*See* ECF No. 33.) Therefore, presumably, the claims were screened through as personal capacity claims only. *See Mitchell v. Washington*, 818 F.3d 436, 442 (9th Cir. 2016) (Where the plaintiff is seeking damages against a state official, a strong presumption is created in favor of a personal-capacity suit because an official-capacity suit for damages would be barred.). To find otherwise would "threaten[] to ensnare parties who may have simply been confused… and may encourage gamesmanship by opposing attorneys." *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). This is particularly true when a party is proceeding *pro se* and may not understand the legal significance between bringing claims in official versus personal capacities. *See Mitchell*, 818 F.3d at 442. Accordingly, this is not a basis to grant summary judgment.

### B. Failure to Exhaust Administrative Remedies

Next, Defendants argue summary should be granted because Welch failed to exhaust his administrative remedies as to the First Amendment retaliation claim against Irvin and the Fourteenth Amendment denial of access to the grievance process claim against Hughes and Garibaldi. (ECF No. 212 at 6.)

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory. *Porter v. Nussle*, 534 U.S. 516, 524 (2002). The requirement's underlying premise is to "reduce the quantity

and improve the quality of prisoner suits" by affording prison officials the "time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation." *Id*. at 524–25.

The PLRA requires "proper exhaustion" of an inmate's claims. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Proper exhaustion means an inmate must "use all steps the prison holds out, enabling the prison to reach the merits of the issue." *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citing Woodford, 548 U.S. at 90). Thus, exhaustion "demands compliance with an agency's deadlines and other critical procedural rules because no adjudication system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford*, 548 U.S. at 90–91.

In the Ninth Circuit, a motion for summary judgment will typically be the appropriate vehicle to determine whether an inmate has properly exhausted his or her administrative remedies. *Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014). "If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts." *Id.* at 1166. The question of exhaustion "should be decided, if feasible, before reaching the merits of a prisoner's claim." *Id*. at 1170.

Failure to exhaust is an affirmative defense. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The defendant bears the burden of proving that an available administrative remedy was unexhausted by the inmate*. Albino*, 747 F.3d at 1172. If the defendant makes such a showing, the burden shifts to the inmate to "show there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him by 'showing that the local remedies were ineffective, unobtainable, unduly prolonged, inadequate, or obviously futile.'" *Williams v. Paramo*, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting *Albino*, 747 F.3d at 1172).

### 1. Analysis

Here, the very nature of Welch's complaint is that he was denied access to the grievance procedure. (*See* ECF No. 34.) Thus, Defendants' argument that Welch's claims should be dismissed because he failed to exhaust his administrative remedies are troubling to the Court. To prove a failure to exhaust defense, Defendants "must first prove that there was an *available* administrative remedy[,] and that the prisoner did not exhaust that *available* remedy." *Williams*, 775 F.3d at 1191 (emphasis added) (internal quotation marks and citation omitted). "[R]emedies are not considered 'available' if, for example, prison officials do not provide the required forms to the prisoner or if officials threaten retaliation for filing a grievance." *Draper v. Rosario*, 836 F.3d 1072, 1078 (9th Cir. 2016); *see also Sapp v. Kimbrell*, 623 F.3d 813, 821–27 (9th Cir. 2010) (explaining proper exhaustion, and recognizing an exception to the requirement where a prison official renders administrative remedies effectively unavailable).

Based on the record before the Court, and given the very nature of Welch's claims, it does not appear that an administrative remedy was *available* in this case. Therefore, the Court finds Defendants failed to meet their initial burden on summary judgment to establish that Welch did not exhaust his available administrative remedies. Thus, the burden does not shift to Welch to come forward with evidence to defeat summary judgment. Accordingly, Defendants' motion for summary judgment as to exhaustion must be denied.

### C. Retaliation

Next, Defendants argue Welch cannot prevail on his retaliation claim as Irvin could not have taken adverse action against Welch because Welch did not complete any protected conduct. (ECF No. 212 at 6-9.) Specifically, Defendants' assert Welch did not submit his kite or file a grievance before he was transferred and therefore, Irvin did not take adverse action against Welch. (*Id.*)

It is well established in the Ninth Circuit that prisoners may seek redress for retaliatory conduct by prison officials under § 1983. *Rhodes v. Robinson*, 408 F.3d 559,

567 (9th Cir. 2004); *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). "Prisoners have a First Amendment right to file grievances against prison officials and be free from retaliation for doing so." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012).

"A prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). Within the prison context, a viable retaliation claim has five elements: (1) a state actor took some adverse action against the inmate, (2) because of, (3) the inmate's protected conduct, and that the action, (4) chilled the inmate's exercise of his First Amendment rights, and (5) did not reasonably advance a legitimate correctional goal. *Rhodes*, 408 F.3d at 567–68. The adverse action must be such that it "would chill or silence a person of ordinary firmness from future First Amendment activities." *Watison*, 668 F.3d at 1114 (quoting *Rhodes*, 408 F.3d at 568).

Welch alleges Irvin, in retaliation for a kite filed against him by Welch, moved Welch into a segregation unit and submitted paperwork to transfer him to the maximum-security prison. (ECF No. 33 at 6.) Welch alleges he submitted the kite on October 7, 2019, the day before he was transferred. (*Id.*) However, there is no evidence in the record of this kite. (ECF No. 212-10 at 3.) Additionally, the response to Welch's grievance alleging retaliation notes that Welch *himself* requested to be placed in protective custody. (ECF No. 33 at 6.)

To raise a triable issue as to motive, Welch must offer "either direct evidence of retaliatory motive or at least one of three general types of circumstantial evidence [of that motive]." *McCollum v. Cal. Dep't of Corr. and Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011) (citation and quotation marks omitted). Circumstantial motive evidence may include: "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered by the [defendant] for the adverse ... action were false and pretextual." *Id.* (internal citation and quotation marks omitted). However, "mere

speculation that defendants acted out of retaliation is not sufficient." *Wood v. Yordy*, 753 F.3d 899, 905 (9th Cir. 2014).

Here, Welch offers no evidence—aside from his own conclusory allegations—that he engaged in any protected conduct. Thus, he cannot prove he was transferred because he engaged in any protected conduct. Welch bears the burden of proving that his protected conduct was the substantial or motivating factor behind alleged retaliatory conduct. Because Welch has not come forward with any evidence that supports his claim, he fails to meet his burden on summary judgment. Therefore, the Court recommends Defendants' motion for summary judgment be granted as to the retaliation claim.

### D. Due Process

Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 350 (9th Cir. 1995) (citing *Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977)). The right of meaningful access to the courts extends to established prison grievance procedures. *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995) (citing *Valandingham v. Bojorquez*, 866 F.2d 1135, 1138 (9th Cir. 1989)). The right is subject to the actual-injury requirement. *Casey*, 518 U.S. at 352. The "actual injury [requirement] derives ultimately from the doctrine of standing, a constitutional principle that prevents courts of law from undertaking tasks assigned to the political branches". *Id.* at 349 The actual-injury requirement mandates that an inmate "demonstrate that a nonfrivolous legal claim had been frustrated or was being impeded." *Id.* at 353.

With respect to the Due Process Claim, Welch alleges Hannah failed to collect his grievances and Garibaldi and Hughes knew of Hannah's conduct and failed to remedy the situation. (ECF No. 33 at 6-7.) Defendants argue Welch cannot show evidence of actual injury because of Hannah's alleged refusal to collect the grievances. (ECF No. 212 at 10.) With respect to Garibaldi and Hughes specifically, Defendants argue that neither was put on notice of Hannah's failure to collect the grievances. (ECF No. 212 at 11.) However, Welch does allege that he spoke to Hughes and Garibaldi about the

issue. (ECF Nos. 33 at 6-7, 214 at 42.)

In his opposition, Welch admits Garibaldi collected all "uncomplete" grievances related to Hannah's "failure to complete" on November 8, 2019. (ECF No. 214 at 42.) However, Welch does not explain how he was harmed by Hannah's failure to collect the grievances. Moreover, even if the Court were to assume that any grievances were not collected on time as he claims, Welch fails to show that any grievances were denied because they were not collected on time, nor does Welch provide any evidence that he was precluded from otherwise pursuing any legal action as a result. A failure to show that a "non-frivolous" legal claim has been frustrated, is fatal to a claim for denial of access claim. *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (citation and internal quotation marks omitted). Because there no evidence of actual injury shown in the record relating to this claim, the Court recommends that Defendants' motion for summary judgment as to the Fourteenth Amendment due process claim be granted.[4]

**V.     CONCLUSION**

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 212), be granted.

The parties are advised:

1.     Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2.     This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the

---

[4]     Because the Court finds that Welch's claims fail on the merits, the Court need not address Defendants' personal participation or qualified immunity arguments.

District Court's judgment.

## VI. RECOMMENDATION

**IT IS THEREFORE RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 212), be **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court **ENTER JUDGMENT** in favor of Defendants and **CLOSE** this case.

**DATED**: November 21, 2022.

_____
**UNITED STATES MAGISTRATE JUDGE**